IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

AVIDAIR HELICOPTER SUPPLY, INC., )
                                  )
              Plaintiff,          )
                                  )
vs.                               )        Case No. 06-0816-CV-W-ODS
                                  )
ROLLS-ROYCE CORPORATION,          )
                                  )
              Defendant.          )

<u>ORDER AND OPINION OVERRULING THE PARTIES OBJECTIONS, ADOPTING THE
MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION, GRANTING ROLLS-
ROYCE CORPORATION'S MOTION FOR PARTIAL SUMMARY JUDGMENT, AND
GRANTING IN PART AND DENYING IN PART AVIDAIR HELICOPTER SUPPLY,
INC.'S MOTION FOR PARTIAL SUMMARY JUDGMENT</u>

On December 8, 2008, the Court designated the Honorable William A. Knox to
conduct proceedings regarding, and prepare a Report recommending a ruling, with
respect to the parties' various motions for summary judgment on trade secret issues.
Judge Knox issued his Report on April 7, 2009. The parties have filed objections and
other responses to the Report.

The Court has conducted a *de novo* review of the Record. This consists of many
briefs, exhibits, and transcripts of hearings. After considering the parties' arguments,
the Court overrules all of the objections. The Court adopts the entirety of Judge Knox's
Report as the Order of the Court, including the recommendations for disposition of the
parties' motions for partial summary judgment. This Order should be regarded merely
as a supplement designed to address the parties' objections.

I. BACKGROUND

The Report succinctly summarizes the events leading to this litigation, including
the lawsuits that were filed, consolidated, and ultimately transferred to this district.

There is no need to summarize these matters again; the Court will only add a description of the claims that have been asserted.

AvidAir's operative pleading remains the three-count Complaint filed on September 29, 2006. The three counts are:

Count I        Tortious Interference with Business Relations, Contracts, and Prospective Economic Advantage

Count II        Violation of the Sherman Antitrust Act (or the Clayton Act) through the abuse of monopoly power

Count III        A claim seeking a judicial declaration that DOIL 24 is not a protectable trade secret

Rolls-Royce's operative pleading is the Amended Complaint filed on July 3, 2007, in the Southern District of Indiana. The Amended Complaint asserts the following claims:

Count I        Violations of the Lanham Act

Count II        Replevin

Count III        Misappropriation of Trade Secrets

Count IV        Conversion/Theft

Count V        Quantum Meruit/Unjust Enrichment

The key to this case – and to all the claims asserted – is the extent to which DOIL 24 is a trade secret. To that end, the parties and the Court have focused on the parties' respective "Count III's" because the status of those counts will likely dictate the outcomes on the other counts. There have been thirteen revisions to DOIL 24, and to varying degrees each of them has been addressed. AvidAir sought summary judgment on the parties' third counts, arguing that all of the revisions were in the public domain or were not protectable for other reasons. Rolls-Royce sought partial summary judgment only with respect to the thirteenth revision. The Report recommends

1.        granting AvidAir summary judgment with respect to Revisions 1-10,

2.        granting Rolls-Royce summary judgment with respect to Revision 13, and

2

3.      denying AvidAir's request for summary judgment with respect to Revisions
        11-13.[1]

## II. DISCUSSION

The Court will limit its discussion to the portions of the Report relevant to the
parties' arguments. This limitation should not obscure the Court's decision to adopt the
Report in its entirety, including those portions that are not specifically discussed herein.

As a preliminary matter, the Court hereby denies *all* pending motions to strike
related to the issues in the Report and this Order. These motions (Doc. Nos. 168, 177,
182, and 184) challenge various materials relied on by the opposing party, arguing they
should not be considered because they are not valid items of evidence or they do not
support the propositions for which they are offered. The Court views these arguments
as a component of the larger issue regarding the propriety of summary judgment and
not as separate matters. The Court will address the arguments to the extent necessary
to resolve the issues involved in the parties' respective Count III's, but there is no
justification for removing documents from the Record.[2]

## A. Rolls-Royce's Exceptions

Rolls-Royce contends the Record establishes Revisions 5 through 11 were (and
are) trade secrets because they were subject to reasonable measures to restrict their

_____

[1]The Report recommends denying summary judgment with respect to Revision
11 because the Record does not conclusively establish whether Rolls-Royce utilized
measure to protect its secrecy. It recommends denying summary judgment with respect
to Revision 12 because the Record establishes it was a trade secret so AvidAir cannot
obtain summary judgment – but Rolls-Royce did not ask for summary judgment with
respect to Revision 12.

[2]Some of these motions may not be fully briefed. However, in light of the Court's
view that they are properly regarded as part of the briefing on the summary judgment
motions and not independent matters, there is no need to wait.

3

publication and dissemination – measures Rolls-Royce contends are comparable to those used with respect to Revisions 12 and 13.  The Court disagrees.

Rolls-Royce relies almost exclusively on William Fesler's affidavit to support its contention.  The Court has reviewed Fesler's affidavit and has determined it is not as helpful as Rolls-Royce posits.

Revision 8 was distributed in March 1994.  According to Fesler, prior to 1994 a Product Support Policy Manual guided Rolls-Royce's[3] conduct.  Article VII of the Manual contains provisions regarding the provision of DILs and DOILs to distributors and declares that Allison (Rolls-Royce's predecessor) "controls the publication and distribution of these manuals by reserving the rights to exclusive publication and printing."  Section 7.2.3 is specific to DILs and says they "are for the exclusive use of the Distributor."  Section 7.2.4 is specific to DOILs and says they "are issued exclusively to Distributors approved by Allison for overhaul."  However, there was no contractual agreement between Allison and the distributors obligating the distributors to do anything or refrain from doing anything.  There is also nothing obligating the distributors to return DILs and DOILs at any time (including in the event of the relationship's termination) or otherwise establishing the DILs and DOILs remained Allison's property.[4]  The Record also establishes the DILs and DOILs did not have a proprietary rights legend.  While Rolls-Royce and its predecessors were only required to take "reasonable" steps to protect the information, a few sentences buried in a manual carrying no contractual weight is insufficient as a matter of law.

In 1994, a network of Authorized Maintenace Centers ("AMCs") replaced the distributor network.  The AMCs entered into an AMC Agreement, page six of which includes a clause declaring "[t]he provisions set forth in the following 'Additional Provisions Applicable to Authorized Maintenance Center Agreement' are hereby incorporated as part of this Agreement."  Article 1.49 of the Additional Provisions

---

[3]References to Rolls-Royce also refer to Rolls-Royce's predecessors.

[4]This conclusion is supported by both the Policy Manual's contents and Fesler's deposition testimony.  Fesler Depo. at 144-47, 149.

addresses "Manuals" and declares "Select Manuals may be owned by Allison and provided to the [AMC] per the terms and conditions of this Agreement or a separate bailment agreement."  Article 6.2 lists a series of publications and materials that may be provided to the AMC and indicates the "material may be Allison proprietary and may bear appropriate copyright and Marks restrictions.  No distribution of this material is to be made outside Authorized Maintenance Center Business Operation(s) . . . ."  Article 13.8 requires AMCs to return "all originals and copies of Manuals, drawings, processes and all other proprietary information furnished by Allison" within fifteen days of the termination of the AMC agreement.

Rolls-Royce contends the term "Manual" includes anything containing technical information, but the term's definition is not so clear.  Moreover, this interpretation does not comport with the definition's statement that "*select*" manuals "*may* belong to Allison." There is nothing in the agreements between the AMCs and Rolls-Royce clearly identifying the DILs and DOILs as proprietary information.  Compounding the lack of clarity is the absence of a proprietary rights legend on the DILs and DOILs themselves. Rolls-Royce cannot cobble together disparate clauses from a multitude of documents in order to demonstrate it took reasonable steps to protect the documents' secrecy.

Other evidence in the Record confirms the absence of any dispute.  A memo written in July 1992 noted that "Ryder Aviall has reprinted our CSLs, CEBs, DILs, DOILs and IBs.  Allison has no objection to Ryder Aviall doing this since these documents are not copyrighted material."  This view was in contrast to the copying of "technical data such as IPCs, O & Ms, and Overhaul Manuals," which the memo indicated could not be copied.  In actual practice, terminated AMCs were not required to return DILs and DOILs.  Fesler Depo. at 137, 264-65, 286-87.  Indeed, the tenor of Fesler's deposition reveals that concern over the secrecy of the DILs and DOILs did not arise until after Rolls-Royce acquired Allison.  It was only after Rolls-Royce acquired Allison that a proprietary rights legend began to appear on the DILs and DOILs.  It also was not until after the acquisition that contracts between Rolls-Royce and those who were provided the DILs and DOILs clearly identified those documents as Rolls-Royce's property and obligated their return to Rolls-Royce.  Prior to that time, the Record leaves no factual

5

dispute that Allison did not take reasonable steps to preserve any proprietary rights in the DILs and DOILs, and summary judgment is properly granted to AvidAir with respect to Revisions 1-10.

The Record is not clear as to the timing of changes in Rolls-Royce's procedures, or when the various steps to preserve proprietary rights were taken. The Court agrees there are factual disputes with respect to Revision 11 that preclude entry of summary judgment for either side.

## B. AvidAir's Exceptions

### *1. FAA Regulations*

AvidAir first argues Revision 13 cannot be a trade secret because FAA regulations require it be made available to the public. It points to 14 C.F.R. § 21.50(b), which states that a "holder of a design approval . . . shall furnish at least one set of complete Instructions for Continued Airworthiness, to the owner of each type aircraft, aircraft engine or propeller upon its delivery . . . ." AvidAir also relies on Appendix A to Part 33 for the proposition that overhaul instructions must be included in the Instructions for Continued Airworthiness.

There are several reasons for rejecting AvidAir's argument. First, AvidAir's Complaint does not seek declaratory judgment with respect to Rolls-Royce's obligations under FAA regualtions. Second, AvidAir has not demonstrated Revision 13 must be included in the Instructions for Continued Airworthiness. To credit AvidAir's implication would effectively hold that aircraft manufacturers lose all proprietary rights. Related to these two points are the provisions of 14 C.F.R. § 33.4, which requires applicants to "prepare Instructions for Continued Airworthiness in accordance with appendix A to this part that are acceptable to the Administrator." AvidAir has not established (or even suggested) the FAA has determined Rolls-Royce's submission is unacceptable or

6

otherwise violates the regulation. Ultimately, the Court believes any complaints about Rolls-Royce's compliance with the FAA's regulations must be made to the FAA.[5]

Even if Rolls-Royce is legally obligated to provide Revision 13 to owners of its helicopters, this does not mean Revision 13 is publicly available. The regulation does not appear to require such disclosure, nor does it forbid Rolls-Royce from imposing restrictions on those who acquire Revision 13. Thus, even if AvidAir's interpretation of the regulations proves correct, this does not mean Revision 13 cannot be a trade secret.

### 2. Previous Disclosures/Reasonable Efforts

AvidAir next argues Revision 13 has been disclosed without restriction and Rolls-Royce's efforts to maintain its secrecy have not been reasonable. However, the records does not support this contention.

For instance, AvidAir contends the Australian Air Force "possessed unrestricted DILs and DOILs since at least 1994," but the portions of the record relied upon do not support this contention. The Blackie Affidavit is not specific to Revision 13 and does not establish the Australian military was free to disseminate documents to the public at large. Chris Anrkom's deposition establishes the Australian Air Force had DILs and DOILs generally but is not specific to Revision 13. Ankrom also does not establish the Australian Air Force had anything, much less Revision 13, without restrictions on transfer or use. As noted in the Report, the record establishes Revision 13 was provided to the Australian military with restrictions. The record provides no basis for believing the Australian military was somehow excepted from the nondisclosure requirements Rolls-Royce imposed on other recipients of Revision 13.

_____

[5]Regardless of the content of, or Rolls-Royce's obligations under, FAA regulations, the Court must deal with Revision 13 as it is – not as AvidAir contends it should be. The question is whether Revision 13 is a trade secret – not whether it should or should not be a trade secret.

AvidAir argues there are other entities who possess or possessed Revision 13 "without restriction." Again, the portions of the record AvidAir relies upon do not establish this fact. The references cited often are not specific to Revision 13 and, in light of the time frame being discussed, cannot possibly refer to Revision 13. The references also fail to establish that Rolls-Royce had excused or exempted the possessor from the obligation to maintain Revision 13's secrecy. Finally, in some instances it appears the party purportedly possessing "without restriction" received the documents in question from someone other than Rolls-Royce – in other words, if they received Revision 13, they received it from someone who was not supposed to provide it to them. The Court reiterates the Report's discussion of this subject:

> AvidAir contends that DILs and DOILs are freely available within the industry, but this general statement does not establish *Revision 13* is freely available. The Record demonstrates that it is not, but the point is irrelevant. The fact that many people and companies have improperly obtained Revision 13 in contravention of the proprietary rights legend and the agreement with AMCs does not determine the issue. Rolls-Royce's efforts have not been perfectly effective, but perfection is not required. Reasonable steps are required, and reasonable steps were taken. Avidair has suggested nothing else which Rolls-Royce should or could have done to protect the information in Revision 13, and no reasonable jury, from the information provided this court, could conclude the steps taken were not reasonable.

The Court's review of the record and the parties' arguments confirms the absence of disputed facts in this matter. The Court also concurs with the Report's summary of the law (on page 10) to the effect that it is generally sufficient to protect a secret by (1) entering a contractual agreement restricting distribution and (2) placing a legend on the document announcing its proprietary status. Accordingly, the Court concludes, as a matter of law, that Revision 13 was the subject of reasonable efforts to maintain its secrecy.

8

The Report carefully analyzes three changes between Revision 13 and prior revisions as part of the process of determining whether there is economic value in Revision 13's secrecy.  AvidAir faults the Report's failure to discuss the time, money and other resources necessary to formulate Revision 13's new content, but there is no requirement that this be done.  The significant point is: time and money were expended, and AvidAir is not entitled to the unfettered use of the benefits of those expenditures.

Revision 13's greatest value, however, arises when an overhauler is required to certify to the FAA that an engine or part was overhauled in accordance with procedures approved by the FAA.  Thus, one in legal possession of Revision 13 can certify that they followed Revision 13.  AvidAir insists it can develop its own procedures and seek the FAA's approval to use them.  This is true, but beside the point.  AvidAir can expend its own resources to develop acceptable procedures – but, as stated above, AvidAir is not entitled to the benefits of Rolls-Royce's efforts.

*4.  AvidAir's Acquisition and Use of Revision 13*

AvidAir describes the reasons it began using Revision 13 and the manner in which it uses that procedure in a confusing attempt to demonstrate that it did not misappropriate Revision 13.  AvidAir's argument starts from the premise that it used Revision 13, which is fatal to its effort because unauthorized use and possession of a trade secret constitutes misappropriation.  AvidAir also contends it did not acquire Revision 13 through improper means.  The Court has not intimated that AvidAir stole Revision 13 – but such a finding is unnecessary.  Misappropriation does not require acquisition through independently wrongful conduct.  It is enough that AvidAir possesses and uses Revision 13 without Rolls-Royce's permission.  Ind. Code §§ 24-2-3-2, 24-2-3-4; Mo. Rev. Stat. §§ 417.453, 417.457.

AvidAir also argues that it does not always strictly follow Revision 13.  Even if AvidAir deviates from the instructions, it still uses the document by certifying to the FAA

that it complied with its contents.  In any event, the record establishes that Revision 13's procedures are used at least some of the time.

## III.  CONCLUSION

The parties' objections and exceptions are overruled.  With the additional discussion in this Order, the Magistrate Judge's Report and Recommendation is adopted in its entirety as the Order of the Court.  AvidAir is granted partial summary judgment on its Count III; specifically, summary judgment is granted with respect to Revisions 1-10 and denied with respect to Revisions 11-13. Rolls-Royce is granted summary judgment on its Count III, which relates to Revision 13.

IT IS SO ORDERED.


/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: June 23, 2009                    UNITED STATES DISTRICT COURT

10